

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Virginia**

JAMES RIVER MANAGEMENT COMPANY,
INC., <u>et al.</u>,

    Plaintiffs,

v.                       Civil Action No. 3:09cv387

MICHAEL P. KEHOE, <u>et al.</u>,

    Defendants.

### MEMORANDUM OPINION

This matter is before the court on the Defendants'
MOTION FOR ADVANCEMENT OF ALL FEES AND EXPENSES (Docket No.
94). For the reasons set forth below, the motion is
granted in part and denied in part.

### BACKGROUND

On June 19, 2009, James River Management Company Inc.,
James River Group Inc. ("JRG"), and James River Insurance
Company ("JRIC") filed suit against Kinsale Management,
Inc., Kinsale Capital Group, Inc., Kinsale Capital Group,
Inc. (collectively "Kinsale"), William Kenney, Brian Haney,
Ann Marie Marson,[1] Edward Desch (collectively "James River
Individual Defendants"), Michael Kehoe, and Greg Share.

The facts are recited fully in the Court's memorandum
opinion of November 18, 2009 (Docket No. 130), and will not

---

[1]    Ms. Marson is no longer a named Defendant in this case.

1

be repeated here. The First Amended Complaint ("FAC") alleges misappropriation of trade secrets and other misconduct, both tortious and in breach of contract, by Defendants who left the Plaintiffs' employment to start their own company. The Plaintiff's claims devolve from statute, as well as from the common law of tort (including breach of fiduciary duty) and contract. Although several claims in the original complaint have been dismissed, most are pending decision on motion for summary judgment.

On October 29, 2009, Defendants Kehoe, Desch, and Kenney moved "for an Order requiring JRG and JRIC to advance all fees and expenses (including attorneys' fees) incurred by or on behalf of the above named defendants in connection with this litigation." Def. Mot. at 1. The Defendants note that rights of advancement from JRG and JRIC must be analyzed separately. JRG, of which Kehoe only was a director, and thus from which only Kehoe seeks advancement, is a Delaware corporation. Def. Mem. at 1. JRIC, of which all three Defendants were officers, and thus from which all three Defendants seek advancement, was incorporated in Ohio. Id. Thus, the controlling law differs with respect to the relief sought against JRG and JRIC.

2

Citing Article VI of JRG's corporate bylaws, and 8 Del. Code § 145(a), Kehoe asserts that he is entitled to advancement, from JRG, of all fees and expenses incurred to date in this litigation, and all future fees and expenses as they are incurred. Def. Mot. at 1. Next, citing Ohio Code § 1701.13(E), Kehoe, Desch, and Kenney assert that Ohio law similarly mandates advancement of their fees and expenses. Id.

The Plaintiffs concede that Delaware law requires JRG to advance Kehoe's fees and expenses relating to the breach of fiduciary duty claim against him. Pl. Oppo. Mem. at 2. However, they contend that JRG is not required to advance fees for the remainder of the claims against Kehoe, which the Plaintiffs contend implicate Kehoe in his personal capacity, not his capacity as director. As to the claims against JRIC by Kehoe, Desch, and Kenney, JRIC asserts several arguments: (1) "JRIC's bylaws create no right of advancement," and thus do not trigger Ohio Rev. Code § 1701.13(E); (2) Ohio Rev. Code § 1701.13(E) does not apply "to suits . . . brought by current corporate management against officers or directors;" and (3) Ohio law "does not

3

mandate advancement to former directors, only current ones." Id. at 2-5 (emphasis added).[2]

The motion is fully briefed, and the matter is ripe for resolution. The moving Defendants have requested oral argument. However, the Court does not consider that to be necessary because the issues are adequately briefed and argument would not materially aid the decisional process.

## II. The Applicable Legal Standard[3]

"[A] corporation can make the right to advancement of expenses mandatory, through a provision in its certificate of incorporation or bylaws." Gentile v. SinglePoint Financial, Inc., 787 A.2d 102, 106 (Del. Ch. 2001). "Where such a mandatory provision exists, the rights of potential recipients of such advancements will be enforced as a contract." Id. Advancement proceedings must be summary in nature if they are to serve their intended purpose of covering the directors' legal expenses while the merits of the litigation are determined. Lipson v. Supercuts, Inc., 1996 WL 560191, at *2 (Del. Ch. Sept. 10, 1996); see also Reddy v. Electronic Data Systems Corp., 2002 Del. Ch. LEXIS

---

[2] Because the Plaintiff's first argument is dispositive, the second and third arguments are not addressed. If they were to be addressed, they would not be persuasive.

[3] This section focuses on Delaware law, because there is almost no Ohio case law on the subject of advancement and indemnification pursuant to the Ohio statute.

69, at *30, 2002 WL 1358761, at *9 (Del. Ch. June 18, 2002) (noting the Delaware General Assembly's determination "that persons claiming a right to the advancement of expenses (including attorneys' fees) under Delaware law should be entitled to have their claims adjudicated by this court in a summary fashion").

Advancement is a remedy distinct from indemnification, and, due to the necessity of promptly adjudicating issues of advancement, a director's right to advancement must be determined before his ultimate right to indemnification. Homestore, Inc. v. Tafeen, 888 A.2d 204, 212 (Del. 2005). A director's right to advancement is in no way dependent upon a showing of any likelihood that he will be ultimately entitled to indemnification. Id.  Nor does it depend, unless the agreement so provides, on a litigant's ability to ultimately repay the funds if the litigant loses. See Reddy, 2002 Del. Ch. LEXIS 69, at *13, 2002 WL 1358761, at *4 (noting that the corporation "could have conditioned former employees' advancement rights on an undertaking, proof of an ability to repay, or even the posting of a secured bond.  But it did not do so.").  Thus, in toto, this motion for advancement is a determination of whether the Defendants meet the basic contractual requirements for

5

advancement of fees and expenses, and, if they do, which fees and expenses are covered.

### III. JRG's Advancement Obligations Under Delaware Law.

The Delaware Code, providing for indemnification of officers by the corporations they serve, as follows:

> A corporation shall have power to indemnify any person who was or is a party . . . to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative . . . by reason of the fact that the person is or was a director, officer, employee or agent of the corporation . . . against expenses (including attorneys' fees) . . . actually and reasonably incurred by the person in connection with such action . . . if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation . . . .

8 Del. Code § 145(a). Indemnification is available for defending actions "by or in the right of the corporation to procure a judgment in its favor,"[4] even if the Defendant does not ultimately prevail on the merits, if a chancery court decides that "in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity." Id. § 145(b).

The statute further provides that the corporation may agree to pay these fees and expenses in such proceedings "in advance the final disposition of such action . . .

---

[4]     Presumably, this refers to shareholder derivative actions.

upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation . . . ." Id. § 145(e). This right is commonly referred to as "advancement."

The Delaware indemnification and advancement statute demonstrates the state's "salutary public policy [of] . . . attracting the most capable people into corporate service." Homestore, 888 A.2d at 218. "Indemnification encourages corporate service by capable individuals by protecting their personal financial resources from depletion by the expenses they incur during an investigation or litigation that results by reason of that service." Id. at 211. Rights of advancement enhance the benefits of indemnification. Although "[n]o Delaware corporation is required to provide for advancement of expenses," id., many do so in their quest to hire top-notch directors. Advancement serves as "an especially important corollary to indemnification," relieving directors and officers "from the personal out-of-pocket financial burden of paying the significant ongoing expenses inevitably involved with investigations and legal proceedings," id. at 211. The Defendants note, Def. Reply at 2, that the JRG bylaws

include an expansive mandatory advancement and indemnification provision, which reads as follows:

> Expenses (including attorneys' fees) incurred by a present or former director, officer, employee, or agent in defending any civil, criminal, administrative, or investigative action, suit or proceeding shall be paid by the Corporation in advance of the final disposition of such action, suit, or proceeding upon receipt of an undertaking by or on behalf of the director or officer to repay such amount if it shall ultimately be determined that he or she is not entitled to be indemnified by the Corporation as authorized in this Article VI. . . . .

The Delaware advancement and indemnification statute "should be broadly interpreted to further the goals it was enacted to achieve." Stifel Financial Corp. v. Cochran, 809 A.2d 555, 561 (Del. 2002). Conversely, the statute is not to be interpreted narrowly if such narrow interpretation disserves the Delaware policy of allowing corporations to grant expansive advancement and indemnification rights to their officers and directors. Id.

However, advancement and indemnification rights may only extend to legal proceedings incurred "by reason of the fact" of the director's position qua director. 8 Del. Code § 245; see also Homestore, 888 A.2d at 211. Thus, lawsuits resulting from activities that a director pursues in his

personal capacity, but not in his corporate capacity, confer neither advancement nor indemnification rights.

The line between actions taken in a personal vis-à-vis a corporate capacity is not drawn according to whether the director or officer acted detrimentally to the interest of the corporation, but instead on whether "there is a nexus or causal connection between any of the underlying proceedings . . . and one's corporate capacity . . . without regard to one's motivation for engaging in that conduct." Homestore, 888 A.2d at 214. Delaware case law is replete with insider trading cases in which executives' expenses are advanced despite allegations of defrauding the corporation or its stockholders of millions of dollars. See, e.g., Homestore, 888 A.2d 204 (upholding advancement of fees to a director who allegedly defrauded the corporation of $15 million);[5] Bergonzi v. Rite Aid Corp., 2003 WL 22407303 (Del. Ch. Oct. 20, 2003) (ordering advancement for a corporate officer who had already pled guilty to deliberately falsifying corporate financial statements and fabricating fraudulent employment agreements, but had not yet been sentenced). See also Stephen A. Radin, "Sinners Who Find Religion": Advancement

---

[5]     Tafeen later pled guilty to securities fraud, received a 30-month jail term for that offense, and settled a civil suit for over $2.6 million.  Mark Stein, Real Money, N.Y. Times, Nov. 12, 2006, § 3, at 2.

of Litigation Expenses to Corporate Officials Accused of Wrongdoing, 25 Rev. Litig. 251, 269-71 (2006) (collecting a dozen cases in which courts enforced advancement provisions despite an officer or director's unlawful conduct that harmed the corporation). As observed in Radiancy, Inc. v. Azar, 2006 WL 224059, at *1 (Del. Ch. Jan. 23, 2006), "[i]t is no answer to an advancement action, as either a legal or logical matter, to say that the corporation now believes the fiduciary to have been unfaithful. Indeed, it is in those very cases that the right to advancement attaches most strongly."

Furthermore, although advancement appears to occur most frequently in cases where the essence of the corporation's allegations is a breach of fiduciary duty claim, there is no requirement that only claims pled specifically as "breach of fiduciary duty" trigger advancement rights. Reddy, 2002 Del. Ch. LEXIS 69, at 19-20 (finding that "the negligence, gross negligence, common law fraud, and contract claims brought against [the ex-employee seeking advancement] all could be seen as fiduciary allegations").

The Delaware chancery court, in Brown v. LiveOps, Inc., 903 A.2d 324, 324-25 (Del. Ch. 2006), considered whether a lawsuit by a corporation against its former co-

founder "assert[ed] claims . . . 'by reason of the fact' that he was an officer, director, or employee of the Delaware corporation," which would trigger the employee's right to advancement of fees and expenses.  The former co-founder contended that he was entitled to advancement because

> he would not have had access to the confidential and proprietary information alleged to have been misappropriated had he not been a corporate officer . . . .  Essentially, Brown argues that he is entitled to advancement of his legal expenses because there is a causal connection between his role as an officer and director . . . and the claims asserted against him . . . .

Id. at 327.  The court agreed.  Quoting Homestore, the court noted that, "if there is a nexus or causal connection between any of the underlying proceedings . . . and one's official corporate capacity, those proceedings are 'by reason of the fact' that one was a corporate officer."  The court then found that the former co-founder's alleged acts were "inextricably intertwined" with his role in corporate management.  Id. at 328.  The allegations were not, nor could they have been, "strictly confined to his actions after his termination as a director and officer of the company."  Id. at 329.

The Plaintiffs raise two cases showing that actions for breach of employment agreements, in some instances,

implicate a director only in his personal capacity, thus rendering advancement and indemnification inappropriate. In Stifel, 809 A.2d at 562, the Supreme Court of Delaware affirmed the chancery court's denial of indemnification respecting an employee's breach of employment contract, explaining that the employee's "decision to breach the contract was entirely a personal one, pursued for his sole benefit." Id. The facts of Stifel, however, were quite different from those at issue in this case: the employee had been terminated by the corporation, which then pursued (successfully) an arbitration proceeding against the employee that prompted the employee to sue the corporation for indemnification.

In Weaver v. ZeniMax Media, Inc., 2004 Del. Ch. LEXIS 10, at *10-11 (Del. Ch. Jan. 30, 2004), in an advancement proceeding, the chancery court explicitly analyzed the "by reason of the fact" language of 8 Del. Code § 145. Noting that this language "is not construed so broadly as to encompass every suit brought against an officer and director," the court identified "breaches of a non-competition agreement" as a "quintessential example[]" of a lawsuit that did not implicate an director's corporate capacity, but rather his personal capacity. Id. at *10. The director in Weaver was sued by his corporation for

allegedly slacking in his professional duties, and also requesting and receiving undue reimbursements. Id. at *11-12. The court found these claims to be "in the nature of an employment dispute, based on a personal obligation owed to the corporation," further noting that the director "did not need to make use of any 'entrusted corporate powers' in order to engage in the conduct that gave rise to the specific claims." Id. at *12. Thus, advancement was not available to him.

The Defendants' efforts to distinguish Stifel and Weaver from Brown notwithstanding, the decisions stand in considerable tension. Whereas Weaver identified non-compete litigation as a "quintessential example" of litigation implicating a former employee in his personal capacity, Brown found that claims of "unfair competition" and "breach of a termination agreement" arose directly out of a former director's corporate capacity.

The more factually similar Brown decision, decided more recently and decided in light of the Supreme Court of Delaware's landmark 2005 Homestore decision, must control. Kehoe is accused of doing, for purposes of this analysis, exactly what the party seeking advancement in Brown had done. Kehoe allegedly used his "entrusted corporate powers" to form the knowledge and expertise required to

assemble a competing company. He then allegedly organized the appropriation of JRG's trade secrets and lured key personnel away from James River. Whether phrased as a "nexus," a "causal connection," or something else, Kehoe's liability, if any is to be found, would have arisen directly out of his prior role as a JRG director.

Though one can question the wisdom of the policy decisions, both by the Delaware General Assembly in enacting 8 Del. Code § 145, and by JRG in offering full advancement to its directors, one cannot question the clarity of Delaware law on this issue. This action, as was DeLucca v. KKAT Management, L.L.C.,

> is yet another case in which [corporations] in an advancement case seek to escape the consequences of their own contractual freedom. Regretting the broad grant of mandatory advancement they forged on a clear day, they seek to have the judiciary ignore the plain language of their contracts and generate an after-the-fact judicial contract that reflects their current preference. But it is not the job of a court to relieve sophisticated parties of the burdens of contracts they wish they had drafted differently but in fact did not. Rather, it is the court's job to enforce the clear terms of contracts. Here, that duty requires that [the] motion for . . . advancement be granted.

2006 WL 224058, at *2 (Del. Ch. Jan. 23, 2006).

## IV. JRIC's Advancement Obligations Under Ohio Law

Ohio law has a statute analogous to that of Delaware granting corporations the right provide for indemnification

14

and advancement of directors' legal expenses. Ohio Code §
1701.13, entitled "Authority of Corporation," provides that
"[a] corporation may indemnify or agree to indemnify" its
management in the same way, for the purposes of this
ruling,[6] as is allowed in the Delaware statute. Id. §
1710.13(E)(1)-(2).

However, on the topic of advancement, the Ohio statute
is worded somewhat differently from the Delaware statute.
It reads as follows:

> Unless at the time of a director's act or
> omission that is the subject of an action, suit,
> or proceeding referred to in division (E)(1) or
> (2) of this section, the articles or the
> regulations of a corporation state, by specific
> reference to this division, that the provisions
> of this division do not apply . . . expenses,
> including attorney's fees, incurred by a director
> in defending the action, suit, or proceeding
> *shall be paid* by the corporation as they are
> incurred, in advance of the final disposition of
> the action . . . .[7]

Id. § 1710.13(E)(5)(a) (emphasis added).

Ohio law on advancement is, charitably put, less fully
developed than that of Delaware. The Court of Appeals of

---

[6]    Ohio law differs slightly respecting indemnification for
"Unlawful loans, dividends, distribution of assets," Ohio Code §
1701.95, in a way that does not impact this case.

[7]    The statute also requires the directors whose expenses are
advanced to issue an "undertaking" (1) to repay the advancement if a
Court finds that he acted "with deliberate intent to cause injury to
the corporation or undertaken with reckless disregard for the best
interests of the corporation;" and (2) to "[r]easonably cooperate with
the corporation concerning the action." The Defendants assert that
they have issued this required undertaking to JRIC. Def. Mot. at 1-2.

Ohio acknowledged as much in MD Acquisition, L.L.C. v. Myers, 173 Ohio App. 3d 247 (2007), which observed that because "the law of advancement is 'rather a Delaware specialty'" (quoting Int'l Airport Ctrs. LLC v. Citrin, 455 F.3d 749, 750 (7th Cir. 2006) (Posner, J.)), and "[b]ecause Ohio courts have had little opportunity to address advancement issues in a comparable context, we would certainly not preclude turning to Delaware law when addressing the merits of [the] advancement claim." See also Radin, supra, 25 Rev. Litig. at 271 ("To the limited extent that there is law [respecting advancement] outside Delaware, it is the same as the law in Delaware."). Given this dearth of Ohio case law, and the substantial similarities between the Delaware and Ohio statutes, the Court finds Delaware case law and the animating principles therein persuasive as to the interpretation of Ohio law.

Although the Ohio and Delaware statutes are similar, both structurally and respecting the verbiage used, the statutes are not identical. For purposes of this case, the key difference between the two statutes is that the Ohio statute's advancement provision states that, for a suit referenced in division 1701.13(E)(1) or (E)(2) (respecting indemnification), expenses "shall be paid . . . as they are incurred, in advance of the final disposition of the

action" unless the corporation specifically states that it does not wish to confer advancement rights. Id. § 1701.13(E)(5) (emphasis added). The Delaware advancement provision (8 Del. Code § 145(e)), by comparison, does not mention the prior indemnification provisions (id. § 145(a)-(b)) within the same statute, and states that fees and expenses "may be paid . . . in advance of the final disposition of such action." Id. § 145(e).

The Delaware statute unambiguously indicates that the advancement right is permissive, in that corporations are not required to advance fees and expenses, but may rather exercise their right to do so by means such as contract or incorporation into their bylaws. The Ohio statute, on the other hand, is ambiguous. One could interpret it, as the Defendants urge, to command a result that corporations must always advance fees and expenses any time a corporate officer or director is sued for acts with a nexus to his official capacity. Alternatively, one could view the right to advancement defined in division (E)(5) as devolving from a decision under (E)(1) or (E)(2) to indemnify, as the Plaintiffs argue. It is undisputed that JRIC did not provide advancement or indemnification rights to its officers in its bylaws. Pl. Oppo. Mot. at 2.

The Plaintiffs' view is the correct one, the Defendants' hyperbolic disparagement thereof as "twisted and incomprehensible" (Def. Reply at 13) notwithstanding. Reading the statute as a whole, its plain language supports the construction that advancement is mandated only when the corporation has exercised the underlying right to make indemnification available. Even looking beyond the plain language of the statute as a whole, the latter view is better policy. The policy considerations set forth in the numerous Delaware decisions on the issue carry no weight when advancement is not a corporate decision, but is mandated in all cases, for every corporate manager.

First, a statute's plain meaning may, in some small measure, be found by examining the title of the statute even though the language of the title is not dispositive. The pertinent statute is entitled "Authority of corporation." Thus, it is evident that phrases within the statute pertain to powers that a corporation may grant or take away. The advancement provision's location under the heading of corporate authority makes clear that corporations are given the power to grant indemnification and the corollary remedy of advancement; however, they are not required to exercise this power. Although division (E)(5) could be read as granting corporations the *authority*

18

*to opt out* of advancement, it would be incongruous to require corporations to "opt in" to indemnification, the underlying remedy that advancement is meant to enhance, but "opt out" of the corollary advancement remedy.

Second, Division (E)(5) of the statute refers specifically to the indemnification divisions, (E)(1) and (E)(2). Although Division (E)(5) states that a corporation can only opt out of advancement "by specific reference to this division, that the provisions of this division do not apply," it is illogical to view this outside of the context of the indemnification divisions, (E)(1) and (E)(2), particularly when these indemnification divisions are cited within (E)(5). The Defendants' interpretation of this ambiguously written statute, that advancement is mandatory even in the absence of a right to indemnification unless the corporation opts out of the advancement division, would be very plausible outside of its context, but is not plausible in context. And, it is axiomatic that statutory provisions must be interpreted in the context of related statutory provisions. E.g., State ex rel. Choices for South-Western City Schools v. Anthony, 840 N.E.2d 582, 589 (Ohio 2005).

The Defendants' strongest contention relates to another division of the statute, which states, in full:

19

> The authority of a corporation to indemnify persons pursuant to division (E)(1) or (2) of this section does not limit the payment of expenses as they are incurred, indemnification, insurance, or other protection that may be provided pursuant to divisions (E)(5), (6), and (7) of this section. Divisions (E)(1) and (2) of this section do not create any obligation to repay or return payments made by the corporation pursuant to division (E)(5), (6), or (7).

Id. (E)(8). This provision recognizes that advancement may be made even when statutory indemnification is not available. It could, out of context, support an interpretation that advancement is required even in the absence of an indemnification provision.

However, the statute must be read as a whole. Its admonishment that (E)(1) and (E)(2) do not limit other protection that a corporation *may* provide is instructive. A corporation may choose to advance expenses even when it provides no underlying right of indemnification, and even when it will ultimately not request repayment.[8] But, all in all, the statute cannot be read to mandate advancement as the default rule for all employees under all circumstances. Indeed, the statute's use of the words "may be provided pursuant to . . . (E)(5)" underscores the fact that a corporation's decision to advance legal expenses is one

---

[8] For example, as (E)(8) recognizes, the corporation may have insurance that will cover the officer's legal expenses, even in the absence of any direct corporate liability to indemnify the officer.

that must be actively exercised in its bylaws or through contract.

From a policy standpoint, it is very important to note that, in Delaware, "[n]o Delaware corporation is required to provide for advancement of expenses." Homestore, 888 A.2d at 211. Rather, it appears, many corporations choose to do so in their campaigns to win the war on talent. A guarantee that one's legal expenses will be paid up front for the litigation and proceedings that "inevitably" (id.) occur when one is a high-level corporate executive undoubtedly serves as a strong inducement to corporate service.

The extent to which advancement provisions, particularly in a corporation's bylaws, reflect a bargained-for agreement, or are more accurately characterized as undue influence of corporate managers over their own pay, irrespective of the potential detriment to shareholders, is debatable. See Jesse M. Fried, Option Backdating and Its Implications, 65 Wash. & Lee L. Rev. 853, 884-85 (2008) (contending that "[t]he fundamental problem in U.S. corporate governance . . . is that executives of widely held firms exert too much influence over their boards"). Provisions such as advancement are particularly attractive to corporations as a form of

21

"hidden" compensation -- they do not appear on the corporation's balance sheet. Cf. id.[9] They are also exceedingly attractive to prospective officers and directors, due in no small part to their "performance-insensitivity." Id. Of course, such measures appear short-sighted from the corporation's perspective when it ultimately ends up footing a hefty legal bill for a former executive who may have abused his corporate powers.

Be that as it may, Delaware law allows corporations the freedom to grant, through voluntary agreement, broad advancement rights to their officers and directors. But, when advancement rights are wrenched from their conceptual moorings in contractual freedom, they lose their supposed benefits. Advancement rights are of no benefit to winning the war on talent when they are not granted by contract, but rather prescribed by statute. It would also result in legal fees being advanced in cases where the party seeking advancement has absolutely no prospect of ultimate indemnification from the corporation. Thus, policy considerations respecting interpretation of the Ohio

---

[9]      Professor Fried, in his article on options backdating, observes that the practice is "simply one example of a long-standing practice of boards favoring managers through executive pay arrangements, and then seeking to hide the amount and performance-insensitivity of the compensation from shareholders. More broadly, it reflects a general tendency on the part of directors to favor executives in many aspects of corporate governance decision-making, one that arises because directors are insufficiently accountable to shareholders." Id.

advancement and indemnification statute require that advancement be linked to its indemnification remedy, which may be granted or withheld by a corporation.

## V. What Expenses Must JRG Advance To Kehoe?

Having concluded that JRG must advance Kehoe's expenses for its claims against him, but that JRIC is not required to advance expenses for its three former officers, the Court's task has just begun. It is necessary now to assess which expenses, in particular, were made on Kehoe's behalf, and which were made on behalf of the other Defendants.

To begin, it is evident that all of the claims against Kehoe result from actions arising out of his status as a former director of JRG.[10]  Thus, Kehoe is entitled to advancement of all reasonable fees and expenses incurred by his counsel on his behalf.  However, the fees and expenses for the other Defendants represented by counsel for Kehoe, to the extent that these fees and expenses are severable, need not be advanced.

In Homestore, 888 A.2d at 209, the chancery court had appointed a special master to decide the reasonableness of the attorney's fees and expenses that were required to be

---

[10]    Defendant Kehoe is named in the following counts:  I, III-V, VII, IX, XI-XIII, and XVI.

advanced to the corporation's former officer. This special master took two months to prepare his thirty-three-page final report, which found "the vast majority (96%) of the fees and expenses incurred" were reasonable, and thus warranted advancement. Id. The Supreme Court of Delaware upheld this determination. However, in Homestore, only one Defendant's expenses were at issue; the court did not need to address situation in which a counsel was entitled to advancement for one Defendant's fees, but not entitled to advancement for co-Defendants' fees.

Counsel for Kehoe have prepared a 140-page listing of all expenses incurred in this case to date. Def. Reply Exh. 4. Considering the decisions reached herein, it will be necessary for Defendants' counsel to segregate the advancement claim to identify those fees and expenses incurred on Kehoe's behalf. To that end, counsel shall submit a memorandum supporting the fees and expenses claimed for Kehoe. If the Plaintiffs disagree with an item they may file a response memorandum and the Defendants may reply. The parties shall forthwith tender an agreed order scheduling the filing of these memoranda.[11]

---

[11]    Counsel are admonished to be judicious in the proper allocation of fees and expenses and in any opposition thereto. The Court does not intend to tolerate nit-picking objection any more than it will tolerate overreaching claims and any counsel who is found to engage in either activity will be sanctioned.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Defendants' MOTION FOR ADVANCEMENT OF ALL FEES AND EXPENSES (Docket No. 94) should be denied as to JRIC, and granted as to JRG, respecting the fees and expenses that Kehoe's counsel has incurred in representing him.

It is SO ORDERED.

                        /s/

                       Robert E. Payne
                       Senior United States District Judge

Richmond, Virginia
Date:  December 8, 2009