IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



JAMES RIVER MANAGEMENT
COMPANY, INC., et al.,

    Plaintiffs,

v.                             Civil No. 3:09cv387

MICHAEL P. KEHOE, et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the Defendant Michael P. Kehoe's MOTION TO STRIKE JURY DEMAND AND SEVER ALL NONJURY CLAIMS (Docket No. 84). For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

On June 19, 2009, James River Management Company Inc., James River Group Inc., and James River Insurance Company (collectively "James River") filed this action against multiple defendants, including Michael P. Kehoe. Subsequently, James River filed an Amended Complaint (Docket No. 54) and a Second Amended Complaint (Docket No. 147), in each of which James River demanded a jury trial "on all issues triable to a jury." Am. Compl. at p. 76.

Thereafter, Kehoe filed a renewed motion to strike James River's jury demand and to sever all nonjury claims as to all counts in which he is named.

The motion is based on a provision in the Employment Agreement between James River and Kehoe which includes, in pertinent part, a choice of law provision and a waiver of the parties' right to a jury trial. Am. Compl. Ex. A ¶¶ 13, 15(d). The choice of law provision states that the Employment Agreement will be "construed and administered in accordance with the laws of the State of North Carolina." Id. ¶ 13. The waiver provision states that: "In the event of any litigation with respect to any matter connected with this agreement or the agreements or transactions contemplated hereunder all of the parties hereto waive all rights to a trial by jury."

Kehoe was the President and CEO of James River from November 2, 2002 until he resigned in March 2008. Subsequently, Kehoe began taking steps to start up a new company, Kinsale, which would operate in the same business arena as James River. After Kinsale was formed, several former James River employees and officers joined Kinsale.

Thereafter, James River filed the action against Kehoe, Kinsale, and three other executives who left James River for Kinsale, alleging breach of contract, trade

secret misappropriation, tortious interference with contracts and business expectancies, conspiracy, and other torts. All of James River's claims are ultimately linked to Kehoe's conduct in forming, staffing, and starting up Kinsale, which, as of this date, is not yet in operation.

The claims asserted against Kehoe are: Count I (Violation of the Consumer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C)); Count III (Statutory Business Conspiracy under VA Code §§ 18.2-499 *et. seq.*); Count IV (Common Law Conspiracy); Count V (Breach of Contract – Injunctive Relief); Count VII (Misappropriation of Trade Secrets under the Virginia Uniform Trade Secrets Act, Va. Code §§ 59.1-336 *et. seq.*); Count IX (Breach of Fiduciary Duty); Count 11 (Aiding and Abetting Breach of Fiduciary Duty); Count XII (Conversion of Property); Count XIII (Violation of the Virginia Computer Crimes Act, VA Code § 18.2-152.4); and Count XVI (Breach of Contract – Damages). Kehoe contends that all claims asserted against him are "connected with" the Employment Agreement. Kehoe Memo. at 2. According to Kehoe, all of these claims must be tried to the Court sitting without a jury because the parties waived any right to a trial by jury in the Employment Agreement.

## DISCUSSION

In its original Complaint and in the two Amended Complaints, James River seeks a jury trial on all issues as to all Defendants, including Kehoe, notwithstanding the jury waiver provision in James River's contract with Kehoe. Upon review of the briefs addressed to the jury waiver issue, the Court directed to the attention of the parties the terms of N.C. Gen. Stat. § 22B-10 which, in relevant part, provides that "any provision in a contract requiring a party to the contract to waive his right to a jury trial is unconscionable as a matter of law and the provision shall be unenforceable." Thereafter, the parties briefed the jury waiver issue in perspective of that requirement.

Kehoe contends that, notwithstanding the provisions of Section 22B-10, the jury waiver provision in his contract is operative and that James River is therefore estopped from relying on Section 22B-10. He also contends that all claims asserted against him are "connected with" the Employment Agreement and therefore fall within the reach of the jury waiver provision. Kehoe's theory is that the North Carolina statute describes a jury waiver provision to be an unconscionable one, and that, under North Carolina law, an unconscionable contract provision is simply voidable (and not void *ab initio*). Therefore, says Kehoe,

4

James River is estopped from denying the validity of the jury waiver clause in the Employment Agreement which it "drafted, insisted on and accepted benefits from."

James River argues that Section 22B-10 renders the jury waiver provision in its Employment Agreement unenforceable. James River also contends that none of the claims against Kehoe, save for its breach of contract allegations in Counts V and XVI, are "connected with" the Employment Agreement. Thus, James River opposes Kehoe's motion and seeks to have all claims against Kehoe tried to a jury. Alternatively, James River argues that, if the waiver provision is enforceable, it applies only to Counts V and XVI.

### A. The Effect of N.C. Gen. Stat. § 22B-10 On the James River/Kehoe Agreement

Both parties agree that, under the choice of law provisions of the Employment Agreement, North Carolina law controls interpretation of the Employment Agreement.

The beginning point for assessment of the jury waiver provision is the provision itself, which was drafted by James River. As explained abovThe jury waiver provision is found in paragraph 15 which is entitled "Agreement To Arbitrate Disputes." This specific provision is paragraph 15(d) entitled "Waiver of Jury Trial." As explained above,

the text of the agreement provides that, "IN THE EVENT OF ANY LITIGATION WITH RESPECT TO ANY MATTER CONNECTED WITH THIS AGREEMENT OR THE AGREEMENTS OR TRANSACTIONS CONTEMPLATED HEREUNDER ALL OF THE PARTIES HERETO WAIVE ALL RIGHTS TO A TRIAL BY JURY." Id. (capitalization in original). Thus, the contract language clearly calls for a waiver of trial by jury in the event of litigation. On the other hand, the North Carolina statute, § 22B-10, provides that a provision of this sort requiring a party to waive the right to trial by jury "is unconscionable as a matter of law and the provision shall be unenforceable." The statute too is clear in its command, and it is generally true that the terms of a statute override a conflicting contractual provision.

Recognizing that specific point, Kehoe asserts that James River is estopped from invoking § 22B-10. Kehoe's argument begins with the contention that an unconscionable contract provision is merely voidable under North Carolina law. Tuckett v. Guerrer, 561 S.E.2d 310, 314 n.5 (N.C. Ct. App. 2002) ("While estoppel cannot arise if a transfer is void, it may, however, operate to enforce an otherwise unenforceable agreement"). It is generally accepted that an unconscionable contract is voidable because a contracting party has the power to validate or ratify the

6

contract as well as to avoid it. See McMahon v. Eke-Nweke, 503 F. Supp. 2d 598, 603 (E.D.N.Y. 2007) ("If a contract is unconscionable it is voidable; but it can be ratified.") (citing King v. Fox, 7 N.Y.3d 181, 191 (2006)); see also 8 Williston on Contracts § 18.1 (4th ed.) (describing the "traditional rule" that unconscionable agreements may not be enforced at equity by the party who dictated the unconscionable terms). It is also established that a separate clause that is unconscionable, within a contract that is not unconscionable as a whole, may be separately avoided or ratified. See, e.g., Harris v. Green Tree Financial Corp., 183 F.3d 173 (3d Cir. 1999) ("Unconscionability is a 'defensive contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract.'") (citations omitted); cf. N.C. Gen. Stat. § 25-2-302 (Uniform Commercial Code as adopted by North Carolina) ("If the court as a matter of law finds . . . any clause of [a] contract . . . unconscionable . . . the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.").

7

The statute at issue is one section in Chapter 22B of the general statutes of North Carolina. Chapter 22B identifies five categories of invalid contract provisions. Four of those provisions (§ 22B-1, § 22B-2, § 22B-3 and § 22B-20) are all declared to be void, not voidable. None of those four provisions do not use the word "unconscionable." In contrast, § 22B-10 declares that jury waiver provisions are unconscionable and unenforceable, but the statute does not declare such provisions to be void.

A fundamental rule of statutory construction applicable under North Carolina law is that statutes on the same subject matter should "be construed together and compared with each other." Transp. Servs. of N.C., Inc. v. Wake County Bd. of Educ., 680 S.E.2d 223, 226 (N.C. App. 2009) (quoting Martin v. N.C. Dep't of Health & Human Servs., 670 S.E.2d 629, 632 (N.C. App. 2009). When that principle is applied to Chapter 22B, the difference in the invalidation statutes is apparent. Indeed, four of the exceptions defining contracts that are invalid as a matter of law explicitly declare that the contract provisions therein described are void. §§ 22B-1, 22B-2, 22B-3 and 22B-20.

Section 22B-10 contains no text specifying that a jury waiver provision is void, notwithstanding that the statute

8

declares such provisions to be unconscionable and unenforceable. The absence of the word "void," and the presence of the word "unconscionable," in § 22B-10 demonstrates that the North Carolina legislature intended that provision to be different from the other four invalid contract provisions which were declared to be void. Thus, as a matter of statutory construction, the jury waiver provision in the Employment Agreement here issued, albeit unconscionable and unenforceable by the party imposing the provision, is voidable by the party upon whom the provision was unconscionably imposed; it is not void. And, under North Carolina law, estoppel can "operate to enforce an otherwise unenforceable agreement." Tuckett, 561 S.E.2d at 314 n.5.

According to Kehoe, because James River bases its claims against Kehoe on the Employment Agreement, James River is precluded from avoiding the effect of jury waiver provisions under principles of estoppel and quasi-estoppel. It is generally true that estoppel "rests upon principles of equity and is designed to aid the law in the administration of justice when without its intervention injustice would result." Thompson v. Soles, 623 S.E.2d 599, 683 (N.C. App. 1990). In North Carolina, as elsewhere, quasi-estoppel "is based on the parties'

9

acceptance of the benefits of the transaction, and provides that 'where one having the right to accept or reject a transaction or instrument takes and retains benefits thereunder, he ratifies it, and cannot avoid its obligation or effect by taking a position inconsistent with it.'" Centura Bank v. Branch Banking & Trust Co. (In re Jones), 141 F. Supp.2d 577, 579 (W.D.N.C. 2000) (citing Parkersmith Properties v. Johnson, 525 S.E.2d 491, 495 (N.C. Ct. App. 2000)). And, unlike some other forms of equitable estoppel, detrimental reliance is not an element of quasi-estoppel. Carolina Medicorp, Inc. v. Bd. of Trustees of the State of N.C. Medical Plan, 456 S.E.2d 116, 121 (N.C. Ct. App. 1995).

The record establishes that counsel for James River drafted the Employment Agreement and that Kehoe had no input into the drafting of the contract. James River and its counsel are chargeable with knowledge that the jury waiver provision was unconscionable under North Carolina law. Nonetheless, the provision was inserted in the Employment Agreement when Kehoe was asked to execute it. James River bases many of its claims directly upon provisions of the Employment Agreement and also asserts other claims that are not directly based on the Employment Agreement but certainly are connected with it. It would be

inequitable to allow James River to retain the benefits of the Employment Agreement without having, at the same time, to live with its other provisions. That is especially so here because James River is the author of the contract.

**B. The Claims In The Litigation Are "Connected With" The Employment Agreement**

The term "connected with" has been interpreted broadly and generally applies to all claims which relate to the contract. In Hendricks Commerce Park, LLC v. Main Steel Polishing Co., Inc., 2009 WL 2524348, at *4 (W.D. Pa. 2009), the Court held that "[i]t is difficult to imagine a broader waiver than the jury waiver set forth [in the parties'] contract" when the waiver provision applied to "any action between the parties in any way connected with [the contract]." The Fourth Circuit, in J.J. Ryan & Sons, Inc. v. Rhone Poulence Textile, S.A., 863 F.2d 315, 321 (4th Cir. 1988) concluded that the term "connected with" embraced "every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." That construction of the term at issue certainly applies with full force here.

An examination of the Complaint (in its original and amended forms) discloses that all of the claims asserted against Kehoe appear to fall within the reach of the term

11

"connected with the Employment Agreement." That is underscored by the fact that James River filed a demand for arbitration against Kehoe citing the Employment Agreement as the predicate for its arbitration request. The request for arbitration was substantially identical to the claims asserted here by James River. Under the Employment Agreement, all disputes that arose or were related to Kehoe's employment and/or the terms and conditions of the Employment Agreement were arbitral. Where, as here, James River has in other proceedings characterized virtually all the facts and the claims presented here as "connected with" the Employment Agreement, it cannot be heard now to contend otherwise.

Further, given the extent to which the claims asserted against Kehoe depend upon either alleged breaches of the Employment Agreement or acts taken in contravention of duties imposed upon him by the Employment Agreement, no matter how those claims are labeled in the complaint, the Court must conclude that all of the claims against Kehoe are connected with the Employment Agreement and are subject to the jury waiver provision.

C. **Severance of Kehoe's Claims is Unwarranted**

Kehoe requests that the Court sever all claims that will not be tried to a jury from those that a jury must

decide, "[p]ursuant to Rules 21 and 42(b) of the Federal Rules of Civil Procedure." Kehoe Memo. at 8. Rules 21 and 42(b) contemplate "two types of severances or separations of claims . . . -- one within the action itself [(Rule 42(b))], the other resulting in a second, or new action [(Rule 21)]." Acevedo-Garcia v. Monroig, 351 F.3d 547, 558 (1st Cir. 2003) (citations omitted). Kehoe does not describe which specific action he requests. In essence, because all of the claims against Kehoe will be tried without a jury, Kehoe effectively requests a separate, non-jury trial for himself, while the other Defendants face trial by jury.

Whether Kehoe's request is characterized as seeking a Rule 21 severance or a Rule 42(b) separation is not pertinent to resolution of this aspect of Kehoe's motion. Either action is a matter of judicial discretion, Acevedo-Garcia, 351 F.3d at 558, and the exercise of that discretion in this case counsels against multiplying the proceedings by segregating Kehoe's trial. Kehoe has asserted no reason for severance or separation other than generalized considerations of fairness, convenience, and the amelioration of confusion. In this case, when the facts of Kehoe's conduct are so inextricably intertwined with James River's claims against the other Defendants,

13

severance or separation would bring about an enormous duplication of effort, and would waste the Court's (and the litigants') resources.

**CONCLUSION**

For the foregoing reasons, the MOTION OF MICHAEL P. KEHOE TO STRIKE JURY DEMAND AND SEVER ALL NONJURY CLAIMS (Docket No. 84) is granted, to the extent that the Court will serve as the finder of fact for all claims against Kehoe (Counts I, III-V, VII, IX, XI-XIII, and XVI of James River's Second Amended Complaint). The motion is denied to the extent that Kehoe seeks to have the claims against him severed, and tried separately, from the claims against the other Defendants in this action.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February 5, 2010